# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

DUSAWON EASMAN,

       Defendant-Appellant.

UNPUBLISHED
January 19, 2017

No. 329381
Wayne Circuit Court
LC No. 15-003071-01-FH

Before: TALBOT, C.J., and JANSEN and HOEKSTRA, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial conviction of possession of a firearm by a person convicted of a felony (felon-in-possession), MCL 750.224f. Defendant was sentenced to two years' probation. We affirm.

Detroit Police Officers Erik Hayes, Johnny Hannah, and Jamarian Holloway were conducting a routine patrol around 2:30 a.m. on March 28, 2015, when they encountered a silver vehicle blocking the pedestrian sidewalk on the southbound side of Kilbourne in Detroit, Michigan. Officer Holloway turned on the squad car's spotlight and completely illuminated the interior of the silver vehicle. Defendant, a passenger in that vehicle, was observed looking in the direction of the squad car and making a "dipping" motion. Officer Hayes testified that by indicating that defendant had made a "dipping motion," he meant that he observed the front seat passenger "leaning forward as if you were placing an item or grabbing an item, leaning forward in the vehicle as securing or concealing an item." Based on his experience as an officer, Officer Hayes suspected defendant was concealing a weapon. All three officers exited the squad car and moved toward the silver vehicle. Officer Hayes removed defendant from the vehicle, handcuffed him, and turned him over to another officer. Officer Hayes then found a blue steel automatic handgun in the area that would have been at defendant's feet.

## I. INSUFFICIENT EVIDENCE

Defendant first argues that the prosecution presented insufficient evidence for a rational trier of fact to find him guilty beyond a reasonable doubt of felon-in-possession. We disagree.

Challenges to the sufficiency of the evidence are reviewed de novo. *People v Lane*, 308 Mich App 38, 57; 862 NW2d 446 (2014). "We review the evidence in a light most favorable to

-1-

the prosecution to determine whether a rational trier of fact could find that the prosecution had proved the crime's elements beyond a reasonable doubt." *Id*. "All conflicts in the evidence must be resolved in favor of the prosecution and we will not interfere with the jury's determinations regarding the weight of the evidence and the credibility of the witnesses." *People v Unger*, 278 Mich App 210, 222; 749 NW2d 272 (2008). A "prosecutor need not negate every reasonable theory consistent with innocence." *People v Nowack*, 462 Mich 392, 400; 614 NW2d 78 (2000). In addition, " '[c]ircumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the elements of a crime.' " *Id*. (citation omitted).

The prosecution presented sufficient evidence for a rational trier of fact to reasonably find defendant guilty beyond a reasonable doubt of the charge of felon-in-possession. MCL 750.224f prohibits a convicted felon from possessing a firearm unless certain circumstances have been satisfied. *People v Minch*, 493 Mich 87, 91; 825 NW2d 560 (2012). In this case, the parties stipulated that defendant had previously been convicted of a felony and was ineligible to possess a firearm. Thus, the prosecution was only required to establish defendant was in possession of a firearm.

Possession for purposes of felon-in-possession may be actual or constructive. *Minch*, 493 Mich at 91. Because no officers saw defendant actually possess the handgun recovered from the vehicle, at issue was whether defendant had constructive possession of the handgun. "The test for constructive possession is whether 'the totality of the circumstances indicates a sufficient nexus between defendant and the [gun].' " *Id*. at 91-92 (citation omitted). " 'Although not in actual possession, a person has constructive possession if he knowingly has the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons . . . .' " *Id*. at 92 (citation omitted). " 'Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant.' " *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011) (citation omitted). "Possession can be proved by circumstantial or direct evidence and is a factual question for the trier of fact." *Id*.

Two officers testified that they observed defendant make a "dipping motion," and there was testimony that this indicated that defendant was concealing a weapon. At the very least, there was testimony that the dipping motion indicated that defendant was picking something up or putting something down. After removing defendant from the vehicle, a handgun was found in the same location where defendant would have been "dipping" his arm. A rational jury could have found that defendant was observed reaching down and that defendant had knowledge of the location of the handgun. Further, because the handgun was found in the area that would have been between defendant's feet, a rational jury could have easily surmised that defendant had reasonable access to the handgun. Accordingly, the prosecution presented sufficient evidence at trial for a rational trier of fact to find defendant guilty of felon-in-possession. Additionally, defendant also claims that the police officers' testimony was unreliable. However, defendant's challenge to the credibility of police officers' testimony at trial also fails because it is not the role of this Court to disturb the jury's determination of a witness's credibility. See *Unger*, 278 Mich App at 222.

## II. GREAT WEIGHT OF THE EVIDENCE

Defendant next argues that the jury's verdict was against the great weight of the evidence presented at trial. We disagree.

Defendant moved for a new trial in the trial court on the basis that the jury's verdict was against the great weight of the evidence. Defendant's motion was denied. Appellate review of a trial court's denial of a motion for a new trial on the ground that the verdict was against the great weight of the evidence is for an abuse of discretion. *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). "An abuse of discretion occurs when a trial court chooses an outcome falling outside the range of reasonable and principled outcomes." *Id*.

A new trial may be granted if a verdict is against the great weight of the evidence. MCR 2.611(A)(1)(e). In determining whether a verdict was against the great weight of the evidence, "[t]he test is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *Lacalamita*, 286 Mich App at 469. " 'Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial.' " *Id*. at 470 (citation omitted).

The jury's verdict was not against the great weight of the evidence presented at trial. Two officers testified that they witnessed defendant making a "dipping" motion. There was testimony that the motion suggested defendant was reaching down to secure or conceal a weapon. At the very least, there was testimony that defendant appeared to be picking something up or putting something down on the floor of the vehicle. In fact, a handgun was recovered from the area that would have been between defendant's feet. Thus, it cannot be said "the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." See *McCray*, 245 Mich App at 637. Because this Court cannot disturb the jury's determination of witness credibility, *Lacalamita*, 286 Mich App at 470, defendant's challenge to the credibility of the police officers' testimony also fails in this context.

Defendant also argues that the jury returned inconsistent verdicts and to allow the inconsistencies to stand would result in a miscarriage of justice. At trial, defendant was acquitted of the charges of carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant argues that all three of the crimes required him to have possession of the handgun, and that "[i]t makes no sense that the jury could find that [he] did and did not possess the handgun at the same time." However, "consistency in jury verdicts in criminal cases is not necessary." *People v Russell*, 297 Mich App 707, 723; 825 NW2d 623 (2012). "Whenever a defendant is charged with different crimes that have identical elements, the jury must make an *independent* evaluation of each element of each charge. A jury in a criminal case may reach *different* conclusions concerning an *identical* element of two different offenses." *People v Goss (After Remand)*, 446 Mich 587, 597; 521 NW2d 312 (1994) (opinion by Levin, J.). Accordingly, a new trial is not warranted.

### III. PROSECUTORIAL MISCONDUCT

Defendant next argues that by eliciting testimony from police officers that they were 100 percent certain about possession, by reiterating that testimony in her closing argument, and by disparaging the character of defendant and defense counsel in her closing argument, the prosecutor's behavior amounted to prosecutorial misconduct. We disagree.

To preserve for appeal a claim of prosecutorial misconduct, "a defendant must contemporaneously object and request a curative instruction." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Defendant did not raise any contemporaneous objection to the prosecutor's conduct at trial or request any curative instructions. Thus, this issue is unpreserved.

In general, "[i]ssues of prosecutorial misconduct are reviewed de novo to determine whether the defendant was denied a fair and impartial trial." *Bennett*, 290 Mich App at 475. "Because the alleged error was not preserved by a contemporaneous objection and a request for a curative instruction, appellate review is for plain (outcome-determinative) error." *People v Callon*, 256 Mich App 312, 329; 662 NW2d 501 (2003). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Generally, to show the error affected substantial rights, the defendant must show "that the error affected the outcome of the lower court proceedings." *Id*. Finally, this Court exercises its discretion in determining whether to reverse, and "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. (citation and quotation marks omitted; second alteration in original).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial misconduct is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). Issues of prosecutorial misconduct are decided on a case-by-case basis. *Id*. at 64.

### A. POLICE OFFICER TESTIMONY

Defendant argues that it was improper for the prosecutor to elicit testimony from Officer Hayes, Officer Hannah, and Detroit Police Detective Stephen Laine that they were certain defendant possessed the handgun. "A witness may not opine about the defendant's guilt or innocence in a criminal case." *People v Heft*, 299 Mich App 69, 81; 829 NW2d 266 (2012).

First, defendant points to three separate exchanges between the prosecutor and Officer Hayes:

> *Q*. Okay. All right. And when you recover the gun, did you preserve it for prints?
>
> *A*. No, ma'am.
>
> *Q*. Okay. And why is that?

*A.* Because I was a hundred percent sure that it was, without a doubt it was his weapon.

\* \* \*

*Q.* Okay. And you mentioned earlier that you were sure that that gun was being possessed by [defendant] that night, right?

*A.* Yes, ma'am.

\* \* \*

*Q.* When you saw the weapon on the bottom of the car, you said – you stated that you were sure that it was [defendant's], correct?

*A.* Yes, ma'am.

*Q.* How sure were you?

*A.* A hundred percent.

Defendant argues that this testimony speaks directly to defendant's guilt, and thus, amounted to prosecutorial misconduct. However, Officer Hayes did not give his opinion regarding defendant's guilt. To the extent that Officer Hayes's testimony constituted an opinion that embraced an ultimate issue to be decided by the jury in the case, the testimony was permissible. See MRE 704 ("Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."). Therefore, the prosecutor did not commit misconduct by eliciting the testimony.

Next, defendant points to the testimony of Officer Hannah, who stated on cross-examination that there was no question regarding possession of the handgun. Defendant argues that Officer Hannah's testimony was improper because it spoke to defendant's guilt. However, as with Officer Hayes, Officer Hannah did not opine that defendant was guilty. Instead, Officer Hannah's testimony encompassed the issue why none of the officers on the scene took fingerprints from defendant or the driver of the silver vehicle. Further, Officer Hannah's testimony was in response to defense counsel's questions and was not elicited by the prosecutor. Therefore, the prosecutor did not improperly elicit this testimony.

Lastly, defendant argues that Detective Laine's testimony regarding the fingerprint policy constituted a "backdoor way of eliciting testimony as to [defendant's] guilt." However, as with the other police officers, Detective Laine did not testify regarding defendant's guilt. Instead, the purpose of Detective Laine's testimony was to reinforce Officer Hayes's testimony that items will not be preserved for fingerprints if possession is certain, and the prosecution elicited this testimony to explain why there was no fingerprint evidence linking defendant to the handgun recovered from the silver vehicle. Again, this testimony was elicited for a proper purpose and did not amount to prosecutorial misconduct.

## B. CLOSING ARGUMENTS

Defendant argues that it was improper for the prosecutor to reiterate in her closing argument testimony from the police officers that defendant "a hundred percent" possessed the handgun recovered from the silver vehicle. Defendant also argues that the prosecutor inappropriately made disparaging statements about defendant's character and defense counsel's character that amounted to prosecutorial misconduct.

"Prosecutors are typically afforded great latitude regarding their arguments and conduct at trial." *Unger*, 278 Mich App at 236. The prosecution is free to argue all evidence admitted at trial, as well as all reasonable inferences arising from that evidence, as they relate to the prosecution's theory of the case. *Id*. The prosecutor need not present her argument in the blandest possible terms. *Dobek*, 274 Mich App at 66.

The prosecutor was permitted to argue the facts of this case in her closing argument, including that the officers had testified that possession of the handgun was certain. When reviewed in context, the prosecutor reiterated this testimony to argue that defendant had knowledge of, and reasonable access to, the handgun. For example, in arguing that defendant had knowledge of the gun, the prosecutor stated:

> If you believe the officers and you believe that in their experience they knew, like they said, he was 100 percent in possession of that gun, because we talked about constructive possession and when you have a gun on the floor in between your feet that you have possession, especially when you're moving to reach for it, that is knowledge of that gun being there. That's possession of that gun being there.

The purpose of the prosecutor's statement was to argue to the jury that, should it find the police officers' testimony to be credible, it allows for the inference that by reaching down, defendant knew that the handgun was there. The prosecutor was permitted to make that inference because constructive possession was the prosecution's theory of the case.

Similarly, the prosecutor argued that defendant had reasonable access to the gun by stating:

> The judge is also going to tell you that in the State of Michigan we have joint possession which means that when there is two people in a vehicle they could both have possession of that gun as long as they both knew about it and both had reasonable access to it. In this case, the officers were convinced that the defendant … they were 100 percent sure that he was the person in possession of the gun. He was the person that was reaching for the gun.

Reasonable access to the handgun is the second element of constructive possession. See *People v Hill*, 433 Mich 464, 470-471; 446 NW2d 140 (1989) ("[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant."). Again, the prosecutor was permitted to argue that the officers' testimony, if found to be credible, allows for the inference that defendant had reasonable access to the

handgun. This argument was proper to make because it spoke to the prosecution's theory that defendant had constructive possession of the handgun.

Defendant next argues that the prosecutor made disparaging remarks about defendant's character during her closing argument. Specifically, defendant takes issue with the prosecutor's comment that

I don't have to show you why the defendant's trying to reach for the gun. You just have to believe that he, in fact, was because he knew that the gun was there. So you guys can figure that out. Why was he reaching for the gun? Maybe he was reaching for it to hide it from the police. Someone that's been previously convicted of a felony might do that.

The prosecutor was permitted to point out all reasonable inferences raised by the facts of the case. The parties had stipulated that defendant was previously convicted of a felony, and thus, was ineligible to possess a firearm. Accordingly, the prosecutor was permitted to infer that if someone had previously been convicted of a felony and was ineligible to possess a firearm, as defendant was, that person may want to conceal that firearm should they ever come in contact with the police.

Lastly, defendant argues that the prosecutor improperly disparaged defense counsel's character in her rebuttal argument. Defendant specifically points to the prosecutor's statements that defense counsel "honestly doesn't remember" what the police officers had testified to and that defense counsel was "trying to make [the jury] focus on things that are not even important in this case." It is well established that a prosecutor cannot personally attack defense counsel. *People v McLaughlin*, 258 Mich App 635, 646; 672 NW2d 860 (2003). The prosecutor is also not permitted to suggest that defense counsel is intentionally attempting to mislead the jury. *Unger*, 278 Mich App at 236. As this Court has explained:

"The prosecutor may not question defense counsel's veracity. When the prosecutor argues that the defense counsel himself is intentionally trying to mislead the jury, [she] is in effect stating that defense counsel does not believe his own client. This argument undermines the defendant's presumption of innocence. Such an argument impermissibly shifts the focus from the evidence itself to the defense counsel's personality." [*Id.* (citation omitted).]

Prosecutorial statements must be evaluated in the context of defense counsel's arguments. *People v Rodriguez*, 251 Mich App 10, 30; 650 NW2d 96 (2002). Further, statements made by the prosecutor may not "require reversal if they respond to issues raised by the defense." *Callon*, 256 Mich App at 330.

When viewed in context, the comments were properly made in rebuttal to defense counsel's closing argument. Defense counsel argued that Officer Hayes had lied about not knowing that Officer Hannah was investigating a second vehicle in the driveway, and that Officer Hannah had outed Officer Hayes's lie by testifying that he was positive he had told Officer Hayes where he was going. We conclude that the prosecutor's comment, that the defense attorney "honestly doesn't remember what they actually said," was made in rebuttal to

-7-

clarify defense counsel's closing argument, and not to disparage defense counsel's character or credibility.

Additionally, the prosecutor's argument that defense counsel was "trying to make [the jury] focus on things that are not even important in this case" was also made in rebuttal to defense counsel's closing argument. Defense counsel argued that with everything going on in the city of Detroit, the officers involved in this case surely had better things to do than to investigate a vehicle blocking a sidewalk at 2:30 a.m. The prosecutor argued in rebuttal that this was irrelevant to the case. While we caution that the statement bordered on an improper statement questioning defense counsel's veracity, we conclude that the prosecutor did not make the statement in order to indicate that defense counsel was lying or misleading the jury. Instead, the prosecutor made the statement to indicate that defense counsel's closing argument encompassed irrelevant issues. Therefore, we conclude that the statement did not constitute prosecutorial misconduct.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant next argues that he received ineffective assistance of counsel. We disagree.

Defendant did not move for a new trial or a request a *Ginther*[1] hearing in the trial court. Accordingly, this issue is unpreserved, and we review the issue for mistakes apparent on the record. *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Id*. (citations omitted).

"Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Lockett*, 295 Mich App 165, 187; 814 NW2d 295 (2012). "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Trial counsel's performance is evaluated without the benefit of hindsight. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

### A. FAILURE TO OBJECT TO PROSECUTORIAL MISCONDUCT

Defendant first claims that defense counsel was ineffective for failing to object to the alleged prosecutorial misconduct outlined above. "Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel." *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). As discussed, the prosecutor did not commit misconduct. Therefore, defense counsel was not ineffective for failing to raise a meritless objection.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

B.  FAILURE TO OBJECT TO FELON-IN-POSSESSION JURY INSTRUCTIONS

Defendant next argues that defense counsel was ineffective for failing to object to the felon-in-possession jury instruction because the trial judge did not instruct the jury with regard to the knowledge requirement of constructive possession.  Defendant's claim fails, however, as the trial court did, in fact, include a knowledge instruction.  Specifically, the trial court instructed the jury:

> Possession does not necessarily mean ownership.  Possession means that either the person has actual physical control of the thing as I do now with the pen I'm holding, or the person knows of the location of the firearm and has reasonable access to it.

Thus, an objection to the jury instructions would have been futile.  See *Ericksen*, 288 Mich App at 201.  The trial court properly instructed the jury on the requirements of constructive possession, namely, knowledge and reasonable access, and thus, defense counsel did not err by failing to object.  Therefore, defendant's claim of ineffective assistance of counsel fails.

V.  MISSING WITNESS INSTRUCTION

Finally, defendant argues that he was entitled to a missing witness instruction due to the prosecutor's lack of due diligence in producing Officer Holloway at trial.  "[A] trial court's determination of due diligence and the appropriateness of a 'missing witness' instruction" is reviewed for an abuse of discretion.  *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004).

Despite being an endorsed witness, Officer Holloway did not testify at trial.  During a due diligence hearing, Detective Laine testified that Officer Holloway was currently disabled due to a serious car accident that occurred a few days before the start of defendant's trial.  Officer Holloway was hospitalized because of his injuries, and he had not returned to work since the accident.  Although Detective Laine had not personally seen Officer Holloway's injuries, he could confirm that Officer Holloway had to be extricated from his vehicle, and had suffered "[m]ultiple facial injuries, [his] forehead was split open, [his] nose was split in half, [his] left nostril was tore [sic] off, [and] both of his eyes are swollen shut."  Officer Holloway had visited with a surgeon a day before the trial began.

After the first day of trial, Detective Laine called Officer Holloway to inquire regarding whether Officer Holloway would be able to testify.  However, Officer Holloway did not answer the phone due to his injuries.  Detective Laine then sent Officer Holloway a text message asking if he was able to talk about the accident.  Officer Holloway responded to the text message, indicating that he would be unable to answer questions regarding his accident at that time.  Detective Laine had attempted to serve Officer Holloway with a subpoena to appear at trial on July 5, 2015, but "didn't realize [Officer Holloway] had been in an accident earlier that day."  Detective Laine made no further attempts to serve the subpoena.  In addition to Detective Laine's testimony, the prosecution admitted the police department, fire department, and EMS reports from the accident.

A prosecutor who has endorsed a witness under MCL 767.40a(3) must exercise due diligence to produce that witness at trial, unless the prosecutor can show that "the witness could not be produced despite the exercise of due diligence." *Eccles*, 260 Mich App at 388. Due diligence constitutes the attempt to do everything that is reasonable, but not everything that is possible, in order to obtain the presence of a witness. *Id*. at 391. "If the trial court finds a lack of due diligence, the jury should be instructed that it may infer that the missing witness's testimony would have been unfavorable to the prosecution's case." *Id*. at 388.

The trial judge determined that the prosecutor had shown due diligence and that Officer Holloway was unable to testify because, just a few days prior, he had sustained serious facial injuries in a car accident. We agree. The record is clear that Detective Laine attempted to contact Officer Holloway via telephone and text message. However, Officer Holloway's injuries prevented him from communicating, at least verbally. Due to the short amount of time between Officer Holloway's accident and defendant's trial, it was reasonable that Detective Laine would be unable to serve Officer Holloway with a subpoena to appear at trial. Thus, the prosecutor established that, through no fault of the prosecution, Officer Holloway was unavailable to testify. Accordingly, no missing witness instruction was required. See *Eccles*, 260 Mich App at 388.

Affirmed.


/s/ Michael J. Talbot
/s/ Kathleen Jansen
/s/ Joel P. Hoekstra

-10-